UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BASHIR AHMAD ARIF,

               Petitioner,

    v.

MARKWAYNE MULLIN, *et al.*,

               Respondents.

CASE NO. 2:26-cv-01063-GJL

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Bashir Ahmad Arif ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On March 27, 2026, Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody.[1] Dkt. 1. The Petition has been fully briefed. Dkts. 1, 5, 8.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **DENIES** the Petition.

## I.     BACKGROUND

Petitioner, a native and citizen of Afghanistan, was paroled into the United States on August 24, 2021, at the Dulles International Airport Port of Entry, as part of the "Operation Allies Refuge" program, a U.S.-sponsored evacuation of Afghan nationals following the

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 3.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 1

Taliban's takeover of the country in that same month. Dkt. 7 ¶ 6; *see also* Dkt. 1 ¶ 2; Dkt. 5 at 4, nn. 4, 5. As part of that parole, Petitioner was granted temporary authorization to remain in the United States until August 23, 2023, and subsequently his parole was extended through August 23, 2025. Dkt. 7 ¶ 4; *see also* Dkt. 1 ¶ 2.

On August 4, 2022, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal ("Form I-589") with United States Citizenship and Immigration Services ("USCIS"). Dkt. 7 ¶ 5. USCIS denied Petitioner's Form I-589 on April 22, 2025. *Id*.

On June 29, 2025, U.S. Border Patrol officials encountered Petitioner near the Peace Arch in Blaine, Washington, close to the Canadian border. Dkt. 7 ¶ 6. Respondents declare that, since Petitioner still had lawful parolee status at that time, he was admitted back into the United States without issue. *Id*. In his Traverse, Petitioner disputes that he was admitted back into the United States, countering that he never left the country on that day. Dkt. 8 at 3.

On August 23, 2025, Petitioner's parole expired, thereby reverting him back to the status he had at the time of his 2021 arrival, an "applicant for admission." Dkt. 5 at 5; *see also* 8 U.S.C. § 1182(d)(5)(A) (explaining parole based on humanitarian reasons or significant public benefit "shall not be regarded as an admission").

On December 19, 2025, Petitioner traveled again to Blaine, Washington, where he encountered Canadian customs officers near the Pacific Highway Port of Entry. Dkt. 7 ¶ 7. After being questioned by these Canadian officials, Petitioner was returned to the United States pursuant to the U.S.-Canada Safe Third Country Agreement ("STCA").[2] Dkt. 1 ¶ 5; Dkt. 7 ¶ 7.

---

[2] The parties maintain separate accounts of Petitioner's encounter with Canadian officials on December 19, 2025. For his part, Petitioner states that he had traveled to Blaine that day with two friends to visit the Peace Arch Provincial Park, but made a wrong turn, stopped their vehicle with the intent to avoid the official border crossing, but were approached by Canadian officials anyway. Dkt. 1 ¶ 4. Petitioner was then brought to a Canadian Border Patrol office and asked whether he wished to make a claim for asylum. *Id*. ¶ 5. Petitioner states he declined and was

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 2

Upon his return to the United States on December 19, 2025, officials from the Department of Homeland Security ("DHS") interviewed Petitioner regarding his "status in the United States." Dkt. 1-4 at 2, Ex. C. Petitioner acknowledged that he was previously paroled into the United States, that his parole has since expired, and that USCIS had denied his asylum application. *Id*. at 4–5. DHS officials subsequently issued and served Petitioner with a Notice to Appear ("NTA"), charging him as inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Dkt. 7 ¶ 8; Dkt. 1 ¶ 6. The NTA alleged in part that Petitioner was removable because, at the time of his application for admission on December 19, 2025, Petitioner did not possess any type of valid travel document and valid unexpired passport or other suitable document of identity and nationality. Dkt. 1-3, Ex. B, at 5. However, this NTA was not filed with an Immigration Court. Dkt. 7 ¶ 8. Even so, on December 19, 2025, ICE issued a warrant for Petitioner's arrest, and, on December 20, 2025, transferred him to NWIPC, where he remains detained. Dkt. 5 at 5; Dkt. 7 ¶ 9.

On January 20, 2026, DHS filed a new NTA with the Tacoma Immigration Court, containing largely the same allegations as the December 19, 2025, NTA. Dkt. 5 at 5; Dkt. 6-1, Ex. A. During proceedings before a Tacoma immigration judge ("IJ"), Petitioner conceded removability as charged in the NTA.[3] Dkt. 1 ¶ 6.

On February 24 and March 12, 2026, Petitioner, through counsel, filed two applications for asylum, Form I-589, with the immigration court. Dkt. 7 ¶¶ 12–13. On April 2, 2026, Petitioner appeared for a hearing on the merits of his applications for relief from removal. *Id*. ¶

---

then returned to U.S. Border Patrol officials pursuant to the STCA. *Id*. For Respondents' part, in support of their Response to the Petition, they filed a Declaration of Karl Douglas, a deportation officer, who asserts that Petitioner in fact did make a claim for asylum, but Canadian officials denied him entry and, thus, he was returned to the United States via the STCA at that point. Dkt. 7 ¶ 7.

[3] During these proceedings, the Tacoma IJ also cancelled the first NTA. *See* Dkt. 5 at 5.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 3

14. On April 2, 2026, Tacoma IJ Traci Winder denied Petitioner's applications and ordered him removed to Afghanistan. Dkt. 6-5, Ex. E. Petitioner has indicated he intends to seek an appeal of the IJ's decision. Dkt. 1 ¶ 6.

## II.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain such relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

Before Petitioner's detention on December 19, 2025, Federal Respondents had permitted Petitioner to live in the community for more than four years pursuant to the discretionary grant of parole set forth in 8 U.S.C. § 1182(d)(5), as reflected in his classification under the Operation Allies Refuge program. Dkt. 5 at 9. However, Petitioner's parole was terminated automatically on August 23, 2025, and thus, at the time of his arrest, his status reverted back to that of an "applicant for admission." 8 C.F.R. § 212.5(e)(1)(i). Petitioner argues that his detention "was done in an incoherent manner and not based on a rational determination of whether he is a danger to the community or a flight risk," and therefore is a violation of the Fifth Amendment's Due Process Clause. Dkt. 1 ¶ 46. Respondents counter that because he briefly left the United

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 4

States and was apprehended upon his return, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(b)(2)(A). Dkt. 5 at 10.

In their Response, Respondents urge the Court to follow this Court's decision in *Mohan v. Noem, et al.*, No. 2:26-cv-0534-TMC, 2026 WL 764176 (W.D. Wash. Mar. 18, 2026). Similar to this case, the petitioner in *Mohan*, an individual who had previously been released from ICE detention on bond, was near the Peace Arch Park in Blaine, Washington, when he mistakenly crossed the border into Canada. *See id.*, 2026 WL 764176, at *1. When Canada refused him entry, he was inspected at the U.S. port of entry and found subject to mandatory detention based on new grounds of inadmissibility. *Id*. The Court found the petitioner was properly held under § 1225(b)(2)(A) because he was detained at a port of entry while attempting to re-enter the United States, i.e. "seeking admission" to the United States, "even if his brief foray into Canada was unfortunate and accidental." *Id.*, 2026 WL 764176, at *3.

As with the petitioner in *Mohan*, although Petitioner has lived in the United States for over four years, he is "seeking admission" to the country "as of [his] most recent apprehension[ ] by immigration officers." *Del Valle Castillo v. Wamsley*, No. 2:25-cv-02054-TMC, 2025 WL 3524932, at *4 (W.D. Wash. Nov. 26, 2025). After asylum in Canada for Petitioner was determined, either by Petitioner's declination or Canada's denial (*see supra* note 2, at 3), Petitioner was returned to the U.S. pursuant to the STCA. Dkt. 1 ¶ 5; Dkt. 7 ¶ 7. Like all others crossing the border that day, Petitioner was subject to inspection by U.S. border authorities. Dkt. 5 at 10; *see also* 8 U.S.C. § 1225(a)(3) ("All [noncitizens] . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."); *Mohan*, 2026 WL 764176, at *3. Petitioner did not have valid travel documents and acknowledged to U.S. Border Patrol officials at the time that he was

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 5

previously paroled into the United States, that his parole has since expired, and that USCIS had denied his asylum application. Dkt. 1-4 at 4–5, Ex. C. Respondents have treated Petitioner as subject to mandatory detention and have not released him since he was detained on December 19, 2025.

Petitioner refers to several cases applying *Mathews v. Eldridge*, 424 U.S. 319 (1976) and addressing whether re-detention of a noncitizen comports with due process. Dkt. 1 ¶ 10 (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1134 (W.D. Wash. 2025); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-1772-JHC-BAT, 2025 WL 2677089, at *2 (W.D. Wash. Sept. 17, 2025); *Y.M.M. v. Wamsley*, No. 2:25-cv-2075-TMC, 2025 WL 3101782, at *1 (W.D. Wash. Nov. 6, 2025)). But unlike those cases, Petitioner was *not* re-detained while residing in the United States.

Rather, he was inspected at a port of entry and found subject to detention based on a finding of inadmissibility, namely that because his discretionary grant of parole had previously been terminated and his asylum application denied, he no longer had documents authorizing his admission or continued parole into the United States.[4] Dkt. 2 ¶ 6; Dkt. 7 ¶ 8. It follows that Petitioner's detention at the border in December 2025 does not implicate the liberty interest he obtained when he was paroled into the United States in 2021 and granted temporary authorization to remain only until August 23, 2025. *See Jennings v. Rodriguez*, 583 U.S. 281,

---

[4] In his Traverse, Petitioner attempts to distinguish *Mohan* based on the fact that the petitioner in that case had *previously* been charged with inadmissibility, and after re-entering the U.S. from his accidental crossing into Canada, was charged with *new* grounds of inadmissibility, namely the possession of marijuana, while here Petitioner himself was never previously charged as inadmissible. Dkt. 8 at 5. While it may be true that Petitioner has not previously been charged as inadmissible, it is undisputed that at the time of his return to the U.S. from his own accidental crossing Petitioner's parole had been terminated and he possessed no travel documents that would allow for his admission into the United States. Dkt. 1 ¶ 6; Dkt. 7 ¶ 7.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 6

287 (2018) (the immigration decision process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").[5]

Because Petitioner was inspected and detained at a port of entry while "seeking admission" to the United States, his mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) does not violate the INA or his due process rights, and Respondents were not required to provide him with a pre-deprivation or bond hearing. *See Rosario Cantillo v. Warden, Northwest Detention Center*, No. 2:26-cv-0575-DGE, 2026 WL 886553, at *3–4 (W.D. Wash. Apr. 1, 2026) (holding in part that petitioner was properly detained under § 1225(b) following the automatic termination of his parole pursuant to 8 U.S.C. § 1182(d)(5)(A)).

### IV.   CONCLUSION

For the foregoing reasons, the Petition (Dkt. 1) is **DENIED**.

Dated this 5th day of May, 2026.

Grady J. Leupold
United States Magistrate Judge

---

[5] Mandatory detention under § 1225(b) without a bond hearing violates due process if it is "unreasonably prolonged." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019). Petitioner, who has been detained for approximately four months, does not argue that his detention has become unreasonably prolonged under the six *Banda* factors.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 7